Good morning, Your Honors. May it please the Court, my name is Jason Hannan. I represent the appellant, Mr. Aguilar-Vera. I would like to reserve a couple of minutes for rebuttal. Keep an eye on the clock. I will do my best. Thank you. The Rule 11 errors that were committed in this case are virtually identical to those committed in Escamilla-Rojas, a case that this Court decided in May of last year. The en masse procedure, as well, that was used in this case at Operation Streamline is also virtually identical to the one used in Escamilla-Rojas. Escamilla-Rojas clearly held that this type of procedure violates the personally addressed requirements of Rule 11. And yet I want to make this Court aware of the fact that in Escamilla-Rojas, there was an error. You left out the second part of that whole thing, that it was harmless. Exactly, Your Honor. And I'm happy to address that. I do think there are some distinctions. I can do that now, if you wish. I believe there are some distinctions, so I wish you would. Okay. If I can address those right now, Your Honor. In Escamilla-Rojas, certainly they did find the error harmless. But the important distinctions revolve around what the defense counsel did in Escamilla-Rojas versus here. In Escamilla-Rojas, the defense counsel avowed to the court, despite objecting under Rule 11, avowed to the court that the plea was knowing, intelligent and voluntary. The defense counsel there also avowed that he had informed Escamilla-Rojas of all of the rights, that he had sufficient time with her, and that he was ready to proceed. Were you counsel below? I was counsel in Escamilla-Rojas, but not here. Oh, because counsel in this case did ask the court to inquire whether it was voluntary, and the court did not do so in this case. Is that correct? Exactly. And that was the next distinction I was going to raise. Most of those distinctions do revolve around what the defense counsel did not do here, essentially, and did, because the other matter important is that defense counsel objected under 11b-2, which didn't happen in Escamilla-Rojas. 11b-2 being the inquiry was were you promised anything, were you forced or coerced to plead guilty. That question was not asked in either case, but defense counsel here actually objected. So we're dealing with harmless error analysis, not only under 11b-1, but the 11b-2 error. But did you introduce any evidence that, but for the fact that he was not permitted or counsel was not obeyed by the court or didn't concede here, that he would have pled guilty anyway or would not have pled guilty? And certainly I understand the court referring to Dominguez-Benitez standard. The defendant has to come forward with some evidence. Given that we're dealing with harmless error as to both 11b-1 and 11b-2, the defendant really isn't required to come forward with that evidence. Dominguez-Benitez was a plain error case. That error doesn't apply here. And I also want to emphasize, given the way Operation Streamline operates, that standard has no practical analysis here. In Operation Streamline, the initial appearance, change of plea, sentencing, all happen at once. If we had a case, the normal case, where we have a change of plea and some time before the sentencing, certainly the counsel could have filed a Rule 11 objection and stated, my client would have done something differently if that were the case after talking to the client. That can't happen here. Are you suggesting that counsel have no opportunity to make an objection under Operation Streamline? Counsel certainly have an opportunity to object. But what they can't do, and what I'm trying to answer here is, when is defense counsel permitted an opportunity to file an allegation by the defendant after consultation that he would have done something differently? That's not available here because Wait a minute. You say it's not available. As I understand it, each attorney has five clients and can see them at any time. There's another they're not boarded up. They're in the courtroom. You can talk to them. I don't get the point that you can't make the objection. The objection can be made, and actually defense counsel attempted to make the objection. But what the judge did is said, I don't want to hear it. You're going to file those in writing. I believe what I did here was fine. And what happens is the defendant is now he's waiting for those objections to be ruled on, which, amazingly, the court actually never ruled on, and the defendant has gone to Mexico. So it's very unique circumstances here. You have objections filed in writing at the court's direction. He tried to object at the hearing. That was refused. She made him file it in writing by that time, and she never answered it. The defendant has gone and deported to Mexico. So I'm not sure how this analysis It's very difficult to do what we would normally do. Well, of course, counsel can advise the client not to go to Mexico. That was not the problem. The problem, this has been set up not only for streamlining, but because in most of these instances, that's exactly what they do. They don't want to be in jail. They want to be in Mexico. They pay their $10, and they leave. I'm not sure that it really makes the mark that counsel is not in a position to protect the rights of the defendant and to advise the defendant. Then the defendant can decide whether they want to stay in jail and have the argument. But I know you and I know what they want, but that's their choice. But the choice hasn't been taken from them. It's just they know what they want to do. Your Honor, harmful or not, I do want to stress another point in regard to this. The magistrate judges in Tucson, they continue to use the procedure that you have before you today and was in Escamilla-Rojas. It's almost as if Escamilla-Rojas never happened. Unlike after Roblero-Solis, which I've cited in the opening brief, there were changes implemented. The courts have not implemented any changes following Escamilla-Rojas. This Court should not only find Rule 11 error, but I urge the Court to give strong instruction, regardless of whether you find the error harmful or not, that this cannot continue. This is still continuing an en masse address of rights to 70 people at once, followed by a gap in time, and depending on whether you have the first, the middle, or one of the last defendants, it can be an hour to two hours before that defendant gives its individual script at the very end. Isn't it true in this case there were a variety of defendants? Some were going to get fined, some were going to go to jail, et cetera. Therefore, when the instructions were given at the beginning in an hour pass, it's understandable. Let's assume your client is in Mexico. What is the remedy here? Suppose, without deciding that, we were to reverse and remand. What is the remedy here? If the court were what? I'm sorry. If we reverse. Yeah. Well, the remedy is certainly that he will not have a conviction. That makes a difference to him because he can or cannot solicit permission to come into the United States based on whether he has a criminal conviction. It matters to him. And that's why the Court found these cases not moot originally in Roblero Solis, which was the first challenge to these types of cases. If we enter an order that he can come in to assert his rights, that order will be taken. Do we have? I don't know. If the issue is that the plea bargain was wrong, we could enter an order saying that he can come back into the United States, withdraw his plea, and then can go to trial. To be paroled in in order to determine what should happen. For that purpose. Would you – I wonder if that's a feasible way for us to handle these cases. I think that happens in sentencing cases where we have folks deported and then the sentence is remanded. We do – I believe that that is possible. So if I could, I'd like to reserve the remainder of my time. One question. Yes. Will he plead guilty? I don't know. Why don't you find out? Then the whole issue is gone. Mr. Bacall, the attorney below, tried to keep contact with the client, but this happens in almost all of these cases. They're deported to Mexico, and their life is about survival. It's certainly not about this, unfortunately. So unfortunately, the contact was lost, and that happens quite often. So I hope that answers the court question. And if I may, I'd like to reserve the rest. Thank you. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States in this case. I think the first thing to point out is that the proceeding – the change of plea proceeding in this case occurred months before this Court decided the Escamilla-Rojas case. In fact, this proceeding in this case was conducted about a week after the Lobrero-Solis proceeding, and that's what the Court was reacting to at that time. So to the extent that the defendant is asking you to evaluate what the magistrates are doing after Escamilla-Rojas based on this case, that's just not supported by this record. Under either plain error or harmless error standard of review, this conviction and sentence should be affirmed. There is absolutely no evidence to suggest that the defendant would not have pled guilty, even if a very, very drawn-out Rule 11 proceeding had occurred. Well, counsel, what is the evidence that he would have pled guilty? Isn't the burden on the government to introduce evidence that he would have pled guilty anyway? If it's a harmless error standard, yes, the burden is on the government. What we have in the total record in this case is we have on the record at the change of plea proceeding an indication that the defendant met with his lawyer to discuss the case before the Rule 11 proceeding. The Court advised him he did not have to plead guilty. The Court advised him that if he pled not guilty, he would be entitled to an individual trial. Is it truly left out the voluntariness? The 11b2 question was not asked specifically. And if this had been in any other case, it would be very quick to send it back, unless it was harmless error. But there was an objection made in this case, wasn't there? There was, but the government's position is the objection was actually withdrawn. What happened in this case? Withdrawn? On the record? What? Withdrawn on the record? No. Implicitly, yes. Implicitly. Let me explain. The defendant started to object. The Court, the magistrate said, you can file your objections in writing. Then the magistrate asked, but basically we're going forward with the sentencing today, aren't we? And the defense counsel said, yes, we are. So in that scenario, I think the objections are withdrawn. If, in fact, the defendant wanted to maintain the objections, the response should have been, no, we don't have a valid Rule 11 proceeding, we can't go to sentencing. By asking to go to sentencing, the government's position is that that did waive the objection, or withdrew the objection. Didn't he sentence the Petitioner before he ruled on any objection? Yes, after the defense counsel said he wanted to go forward with sentencing. Yes. Yes, that's correct. How can you say it was waived, then? I'm sorry. I should have said withdrawn, actually, was the word I should have used. All right. Not waived. Withdrawn was the word I should have used. I apologize for misspeaking. And then at the end, when the Court is doing the individual call, getting back to the harmless error, the defendant specifically told the magistrate he understood his rights and he wanted to give up the rights to plead guilty. Now, the only – with that record, the defendant is saying he wants to plead guilty, he knows what he's doing. There is enough in that record, just as there was in the Escamilla-Rojas case, for a court to find that there was no – that the defendant would have pled guilty anyway, basically. Well, in Escamilla-Rojas, wasn't it we're dealing with plain error there and here we're dealing with harmless error? Actually, Escamilla-Rojas did plain error review for the 11b-2, which is the – Exactly. But it did harmless error analysis for the 11b-1 part. Well, wouldn't we have harmless error with 11b-2, then, in this case? And how was it harmless when he tried to object, the magistrate said, you know, file it in writing, the magistrate then senses him before he can file anything? For harmless error, what the government has to show is that the defendant would have pled guilty without the alleged errors. Again, everything in this record demonstrates the defendant not only voluntarily and knowingly pled guilty, he wanted to plead guilty. And he wanted to get this over with and move on. Well, why would the counsel say to the magistrate judge, Your Honor, won't you test whether this plea is voluntary? And he waved him off. He said you can make any objections in writing and then proceeds to sentence him before any objections can be made in writing. Why is that voluntary? Because the defendant says he understood his rights and that he wanted to plead guilty. There is no that to step back, maybe. The problem with your argument is there's no evidence to support your point. Voluntariliness means the person, there's no pressure put on him. The individual may say, I want to plead guilty, but it's not voluntary. Somebody is pushing him. And we find that in courts, where people want to take the rap for their wife or something. And so the idea of voluntariness is to bring out, to make sure, that there's been no pressure requiring the person to plead guilty, even though they want to plead guilty. So I'm not sure that they say, I want to go ahead and plead guilty, really answers the question that is the bottom of the voluntariness requirement.    really answers the question that is the bottom of the voluntariness requirement. For example, there could be an arm-twisting going on, and they're going to plead guilty, and they want to do it even though they're, they've been pushed into it. And in this case, again, in addition to what I have, you have the complete absence of any evidence that it was involuntary. There's no, in the typical Rule 11 case where there's a claim of involuntariness, there's some, not some suggestion, there's usually a direct statement by the dependent. I wouldn't plead guilty. The question is always asked. When I was taking these, I never accepted a plea without specifically asking whether or not there's been any pressure, et cetera, et cetera. Right. And the question in this case is, would the dependent have pled guilty anyway? And every bit of evidence is to the, supports the idea that he would have pled guilty. And there's absolutely no evidence to the contrary, not even an allegation by the dependent that he wouldn't have pled guilty otherwise. But the point is, if he's pleading guilty because there's, it's nonvoluntary, then you're just doing away with the Rule 11 plea, aren't you? What we're dealing with in this case is basically trying to decide, based on the record we have in front of us, whether the defendant would have pled guilty anyway. No, we aren't. We aren't. There's constitutional violations that take place. And even though they want to go around them, we won't let them do that. If the person's, if the person you find out in a Rule 11 plea wants to go ahead, but there's been pressure put on them, or they're going ahead because they're trying to protect somebody else, we never accept those. So the problem is, it's not only they want to go ahead, but that you have to show that they're voluntarily wanting to go ahead. And I don't see the record for that. Like I said, there is the colloquy in total. There is the lack of any suggestion by the dependent that his plea wasn't voluntary. That's right. That's the usual situation. The judge has to ask the question. Well, in the usual situation where there's an alleged Rule 11 violation, the cases I've seen, typically, the dependent says, I wouldn't have pled guilty, or I wasn't in, it wasn't voluntary, I wouldn't have pled guilty. We have none of that here. But that isn't his burden. It's the burden of the government to prove. And in harmless error, it's the burden in the harmless error, but you can consider the record in its entirety. And I think the lack of any even allegation that he wouldn't have pled guilty is something you can consider. And for all of these reasons, the result in this case should be the same as in Escamilla-Rojas. Let me ask you a question on another subject. What do we do with this case? Usually there's a defendant around. There's no defendant around.  And I'm not sure that there has to be a reversal to go back. Can we do that without the defendant being brought back into court to undo what's been done? I believe so. I think Mr. Hannon is right there. Robrero-Solis' case decided that these cases were not moved. I think what would procedurally happen in your hypothetical is it would go back to the district court, the district court would vacate the change of plea and sentence, and then the information would still be on file, and that would be an active information. Presumably an arrest warrant would be issued if the defendant didn't show up for a further  And if, in fact, the defendant came back into the country, that would be executed. I think that would be how it would work as a practical matter. Order the defendant to be admitted to the country for the purpose of appearing? I mean, if a defendant is coming to answer a criminal charge, the government would parole him in. I have no doubt about that. But, yeah, if the court wanted to order that out, then that would be. Okay. Thanks. And, Leslie, I hope this is all a new ballgame for us. We appreciate your candor and your comments. Does the Court have any further questions? No, thank you. Time is up. My concern is not only with Mr. Aguilar-Vera, but all of these defendants that are going through Operation Streamline. In 2009 was the first challenge to this procedure. Judge Noonan stated emphatically, we cannot take changes of plea like this, not in the interest of efficiency.  And that was in footnote 3 in Escamilla-Rojas. The Court says immediately follow each advisement of right with an immediate questioning of the individual defendant, so that we don't have this gap in time when you're going to address 70 defendants at once. What about the fact that Escamilla-Rojas was the defendant? I'm just suggesting that Escamilla suggests a remedy here. Escamilla-Rojas does instruct the lower courts. It gives a suggestion about how it might alleviate its concerns. My point is just simply, since Escamilla-Rojas, actually the courts haven't made any changes. They did after Roblero-Solis. We don't have any record on that, Counsel. And this is a structural problem that we usually let the government work out. It would be very difficult for us up here with absolutely no evidence to start out of whole cloth designing a program. We have to do it case by case. I understand that, Your Honor. The only question that I had was that each one of the attorneys consults with these people. I think in the sense that attorneys are being involved in this, it's a great improvement from what we used to have years ago. If the attorney makes sure that it's a voluntary plea, and if the attorney testifies as to that, would that be sufficient? I don't know, Your Honor. It depends on certainly what happened exactly. But here the defense attorney didn't avow to that, and I wouldn't know what would happen with Mr. Bacall. I would assume that a competent defense attorney would look into these things before they allow it to happen. And then we just duplicate that in open court with a judge. And the thought strikes me that I just wonder if it's already been done but just hasn't been done correctly. But we don't have any record on that, do we? Unlike in Escamilla, we do not have a record of that. And the defendant's words alone are not enough. Escamilla Rojas made that point and cited it to a case. We need more from the government. Well, if competent counsel had made the investigation, I suppose it would be more. But there's nothing in this record on that. There's nothing in the record as to the issues that were avowed to Escamilla Rojas, which I did, actually. Thank you very much. The case of United States v. Aguilar-Vera will be submitted.
judges: Wallace, Nelson, Bea